**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**vs.**

                                **No. CR 04-0269-RB**

**ROSA GLORIA NUÑEZ-AVITIA,**

    **Defendant.**

## MEMORANDUM OPINION

**THIS MATTER** comes before the Court on Defendant's ("Ms. Nuñez") sentencing. The applicable Guideline range is 46 to 57 months. The presentence report ("PSR") recommends a sentence of 46 months, followed by a 2-year term of supervised release. Ms. Nuñez has been in custody for 17 months. For the following reasons, I intend to sentence Ms. Nuñez to a term of 17 months, or time served, whichever is less, in the custody of the Bureau of Prisons, followed by a 2-year term of supervised release. A separate sentencing hearing will be set as my calendar permits.

**I. Background.**

On December 28, 2003, Ms. Nuñez was apprehended at the Border Patrol checkpoint located on Interstate 25 north of Las Cruces, New Mexico. Ms. Nuñez was a passenger in a vehicle. The Border Patrol agent asked Ms. Nuñez to state her citizenship. Ms. Nuñez

admitted that she was a citizen of Mexico and that she had no legal documents to allow her to be in or remain in the United States legally. A records check revealed that Ms. Nuñez had been deported from the United States subsequent to being convicted of an aggravated felony. There was no record indicating that Ms. Nuñez had applied for consent to reapply for admission to the United States.

Ms. Nuñez was arrested on December 28, 2003, and has been in custody since that date. On February 18, 2004, a one-count Information charged Ms. Nuñez with Reentry of Deported Alien Previously Convicted of an Aggravated Felony, in violation of 8 U.S.C. §§ 1326(a)(1) and (2); and 8 U.S.C. § 1326(b) (2). On the same day, she pleaded guilty to the Information.

The 2003 Sentencing Guidelines suggest a sentencing range of 46 to 57 months. Ms. Nuñez accepted responsibility for reentry after having been deported and admitted her previous conviction of an aggravated felony. According to the PSR, Ms. Nuñez was convicted of Petty Theft on March 28, 1986, Second Degree Robbery on January 12, 1990, and Possession of a Controlled Substance on April 2, 1998 in the State of California. She was deported on February 21, 2002. The PSR indicated that the adjusted offense level was 24. Ms. Nuñez received a three-level reduction for acceptance of responsibility, which generated a total offense level of 21. Based on her prior convictions, Ms. Nuñez was assessed a criminal history category of III. Based on a total offense level of 21 and a criminal history category of III, the Guideline imprisonment range is 46 to 57 months.

Ms. Nuñez was born on March 5, 1965 in Durango, Mexico. She was orphaned at

age five and raised by her grandmother, Petra Avitia. When Ms. Nuñez was a teenager, her uncle Pancho Quintana brought Ms. Nuñez to the United States on the pretext that she could obtain a better education in the United States than was available in Mexico. Once she arrived in United States, she lived with Quintana, his wife, and Ms. Nuñez's younger sister, Gloria Acevedo. Contrary to his representations to her grandmother, Quintana did not allow Ms. Nuñez to go to school.

Quintana was a drug dealer who viciously abused his wife, Ms. Nuñez, and Ms. Acevedo. He was a violent man and always had guns and accomplices nearby. Although he was paralyzed and confined to a wheelchair, Quintana would shoot at the floor near his wife and the girls if they ever disobeyed him. Quintana shot and killed animals at the house.

When Ms. Nuñez was fourteen and Ms. Acevedo was thirteen, Quintana forcibly addicted them to heroin and forced them into prostitution. Ms. Nuñez and Ms. Acevedo were not allowed to leave the house; they did not telephone the police because they were afraid Quintana would kill them and Quintana supplied the heroin their addiction craved.

The abuse continued for several years until Antonia Nuñez, the older sister of Ms. Nuñez and Ms. Acevedo, discovered what was happening and rescued them. By that time, Ms. Nuñez was pregnant with her son, Frank. Antonia Nuñez brought Ms. Nuñez and Ms. Acevedo to live with her in Maywood, California. Fearing that Antonia Nuñez would report the abuse to the police, Quintana fled to Mexico where he was soon murdered. Ms. Nuñez and Ms. Acevedo have been struggling with their heroin addictions ever since. After two months in detention, Ms. Nuñez overcame the physical addiction.

Frank is now grown up and has a job in Phoenix, Arizona. Ms. Nuñez's daughter, Rosalinda, is 16 and lives with Antonia Nuñez in California. Both children are supportive of their mother. Ms. Nuñez's grandmother, Petra Avitia, is now about 80 years old and resides in Juarez, Mexico, along with Ms. Nuñez's aunt. The family plans to help Ms. Nuñez set up a residence and a small clothing shop in Juarez. Ms. Nuñez plans to join Narcotics Anonymous ("NA") or some similar program in Juarez. Ms. Nuñez understands that she cannot return to the United States. Her family plans to visit her in Juarez at every opportunity. Ms. Nuñez will have her grandmother and aunt close by for daily support. The entire family is united in the effort to help Ms. Nuñez overcome her problems.

**II.   Analysis.**

The Supreme Court's recent holding in *Booker* "makes the Guidelines effectively advisory." *United States v. Booker*, 124 S.Ct. 738, 757 (2005). Moreover, "[i]t requires a sentencing court to consider Guidelines ranges . . . but it permits the court to tailor the sentence in light of other statutory concerns as well, *see* § 3553(a) (Supp. 2004)." *Id.* Thus, the Court is no longer bound by the Guidelines and must consider the §3553(a) factors in determining the appropriate sentence for Ms. Nuñez.

Section 3553(a) states that the court shall impose a sentence sufficient, but not greater than necessary, to achieve the statutory objectives of reflecting the seriousness of the offense, promoting respect for the law, providing just punishment for the offense, affording adequate deterrence, protecting the public, and providing the defendant with needed training and

medical care.  *See* 18 U.S.C. § 3553(a).

In determining the particular sentence to be imposed, the court shall consider (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the sentencing range established by the Guidelines; (5) any pertinent policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparity; and (7) the need to provide restitution. 18 U.S.C. § 3553(a).

In determining the proper sentence for Ms. Nuñez, I find her history and characteristics to be especially compelling.  The shocking circumstances of Ms. Nuñez's past are reminiscent of *The Tale of Innocent Erendira and Her Heartless Grandmother* by Gabriel Garcia Marquez.  Tragically, the events of Ms. Nuñez's adolescence are truth and not fiction; I fully credit the testimony of Ms. Nuñez and her family.  Indeed, the Government did not take issue with the fact that there was drug abuse and sexual abuse. When Ms. Nuñez was 14, her uncle addicted her to heroin and sold her into prostitution. The effects of this horrific abuse have followed Ms. Nuñez throughout her life.  In my view this factor takes this case outside the heartland and suggests that a lesser sentence than the 46 months recommended by the Guidelines is appropriate in this case.

I next consider the potential for the sentence to deter Ms. Nuñez from future criminal conduct.  Ms. Nuñez understands that she cannot reenter the United States.  Ms. Nuñez has spent 17 months in custody.  I believe that Ms. Nuñez has learned her lesson, and will not elect to reenter the United States in the future, knowing full well that if she does she will be

sentenced to a lengthy prison term. This factor, therefore, suggests that a 46-month sentence is not necessary to protect the public and deter Ms. Nuñez from future criminal behavior.

With respect to the potential for the sentence to provide Ms. Nuñez with needed educational or vocational training, medical care, or other correctional treatment, I find that a 17 month sentence will satisfy this requirement. Ms. Nuñez is able to read and write in the Spanish language and was employed as a store clerk and food seller in Juarez from 2000 until 2003. She completed eight educational, religious, and substance abuse courses while she was in custody. Ms. Nuñez had a head injury in 1998, but is presently in good physical health. Ms. Nuñez has strong family support and will attend NA-type meetings in Juarez. Ms. Nuñez's psychiatric expert, Dr. Fishbein, testified that so long as she has relatives nearby, a social support system such as church, and goes to NA-type meetings, she is likely to remain drug-free. Ms. Nuñez does not need any specific medical care, or other correctional treatment. Nothing about Ms. Nuñez suggests that a 46-month sentence will more effectively rehabilitate her than a 17-month sentence. I do not believe that a 46-month sentence is appropriate in this case.

### III.  Ms. Nuñez' sentence.

Having given due consideration to the Guidelines' range and the factors listed in 18 U.S.C. § 3553(a), I believe that this extraordinary case warrants a lesser sentence than the 46-month sentence recommended in the PSR.

I, therefore, intend to sentence Ms. Nuñez to a 17-month sentence, or time served, whichever is less, followed by a 2-year term of supervised release. A sentencing hearing in this matter will be set as my calendar permits.

*Robert Brack*

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**